**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.W. and H.W.**

**No. 21-0343** (Taylor County 20-JA-18 and 20-JA-19)

**MEMORANDUM DECISION**

Petitioner Mother A.W., by counsel Katica Ribel, appeals the Circuit Court of Taylor County's March 29, 2021, order terminating her parental rights to B.W. and H.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, Samantha L. Koreski, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and failing to impose a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2020, the DHHR filed an abuse and neglect petition alleging that petitioner abused the children by virtue of substance abuse and giving the children, then fourteen and fifteen years old, marijuana and nicotine pods that are used in vaporizers. Child Protective Services ("CPS") initiated an investigation upon a referral, during which fifteen-year-old H.W. confirmed that petitioner gave her marijuana and nicotine pods. During the investigation, a witness stated that B.W. previously found drug paraphernalia in petitioner's home. The DHHR also discovered that petitioner suffers from mental health issues that she treated inconsistently, resulting in her inability to control her emotions and sometimes manifesting in physical violence. When CPS spoke with

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

petitioner, she denied all the allegations. CPS instituted a safety plan under which the children would be placed in the nonabusing father's home. The CPS worker explained the protection plan to petitioner in detail, including that it prohibited her from having contact of any kind with the children. The worker was explicit that this included phone calls, text messages, and social media. According to the petition, "[w]ithin one minute of agreeing to the protection plan," petitioner called H.W. Additionally, the day after the protection plan was implemented, CPS observed petitioner attempting to repeatedly interact with H.W. on social media. According to the petition, petitioner was required to comply with certain conditions imposed in an unrelated family court proceeding, such as a drug and alcohol assessment and random drug screens, but she had not done so. Following the petition's filing, petitioner waived her preliminary hearing.

In September of 2020, the circuit court held an adjudicatory hearing. Petitioner did not appear for the hearing but was represented by counsel. Petitioner's counsel informed the court that she had spoken to petitioner approximately twenty minutes prior to the hearing and provided her with the relevant information for remote attendance by text and e-mail. Counsel indicated that petitioner then failed to answer any subsequent calls, and when the court attempted to call petitioner the call immediately went to voicemail. As such, the court found that petitioner "made a conscious decision not to take part in the adjudicatory hearing." During the hearing the DHHR introduced forensic interviews of both children in which they disclosed that petitioner abused marijuana in their presence and that petitioner allowed the children to use marijuana as well. The DHHR also indicated that petitioner had not been compliant with drug testing as ordered, in addition to her failure to comply with random drug screens and an alcohol and drug assessment in the unrelated family court proceeding. According to testimony, petitioner had not submitted to a single drug screen during these proceedings. Further, because of her refusal to submit to drug screens, petitioner's visits with the children were suspended. Finally, the DHHR indicated that petitioner continued to initiate contact with H.W. outside of supervised visitation. The children's father also testified that petitioner threatened to kill his girlfriend and herself and that petitioner's behavior since the parents' separation had been erratic. The father also testified to petitioner's history with mental health issues, her failure to consistently treat these issues, and their negative impact on the children. Based on the evidence, the court found that petitioner suffers from mental illness and emotional instability which she self-medicated with illegal drugs. The court also found that petitioner involved the minor children in using illegal drugs by providing them marijuana. As such, the court adjudicated petitioner as an abusing parent. The court also reiterated that petitioner was to submit to random drug screens moving forward.

In February of 2021, the court held a dispositional hearing, during which both the DHHR and the guardian recommended termination of petitioner's parental rights. A CPS worker testified that she was initially inclined to recommend that petitioner receive an improvement period, but her opinion changed upon witnessing petitioner's failure to comply. According to the worker, petitioner failed to submit to a single drug screen during the proceedings. The worker was notified that petitioner participated in parenting services, but that there was no indication that petitioner participated in adult life skills services. The worker also indicated that petitioner appeared to be under the influence of drugs or alcohol during a video call with the children in February of 2021. The worker testified that H.W., then sixteen years old, did not wish to have contact with petitioner unless petitioner was clean and that B.W. would like to see petitioner get clean and find stability. The worker also explained that although petitioner completed a psychological evaluation, she had

not followed any of the recommendations contained therein, such as attending a detoxification program followed by substance abuse treatment. Petitioner, who attended the hearing remotely,[2] testified that she was currently in Indiana because she had been traveling with her significant other, a truck driver, for two months. Petitioner indicated that after Indiana, she and her significant other would be travelling to Wisconsin and Kentucky. According to petitioner, she takes care of the "business side" of the trucking. Petitioner addressed her various moves during the proceedings, including one to Pennsylvania, and the impact that had on her participation in services. Despite moving several times, petitioner indicated that she was continuing with parenting classes and that an assessment determined that adult life skill services were unnecessary. Petitioner also denied that she ever abused any illegal substance.

Based on the evidence, the court found that petitioner refused to acknowledge that she has a drug problem, even though the minor children recognized that her drug addiction was serious. Further, the court determined that petitioner was minimally compliant with services and had not reported for any drug screens, as required. Finding that petitioner was "in deep denial" and failed to follow through with the case plan and other remedial services, the court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Further, the court concluded that termination of petitioner's parental rights was necessary for the children's welfare, as it was not in their best interests "to be put through continued turmoil as a result of [petitioner's] drug addiction and mental health issues." Based on the children's express desire to see petitioner if she sought help and addressed her issues, the court granted petitioner post-termination visitation under certain conditions. It is from the dispositional order terminating her parental rights that petitioner appeals.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The record shows that the parties were required to attend this hearing in person, but that the circuit court permitted petitioner to attend remotely when it became clear she was not currently in the state. The court noted that petitioner had "no appropriate reason for why she is not present in person for the dispositional hearing."

[3]The permanency plan for the children is to remain in the care of their nonabusing father.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. According to petitioner, "the Court must look at the Petitioner's compliance with the Court Orders." She also argues that it would be in the children's best interests to allow her a chance to correct her deficiencies. We find, however, that these bare arguments do not entitle petitioner to relief, especially in light of her willful refusal to follow the vast majority of the requirements below.

As we have explained, a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Here, the record shows that petitioner failed to satisfy this burden. While it may be true that petitioner was somewhat compliant with parenting services, she ignores the fact that she willfully refused to attend hearings; did not submit to a single drug screen despite repeated orders to do so, which resulted in her visitation with the children being suspended; and failed to follow the recommendations of her psychological evaluation, including submitting to substance abuse treatment. Petitioner also repeatedly ignored the prohibition against contacting the children outside of supervised visitation, and, even more egregiously, left the state on two separate occasions; first moving to Pennsylvania before returning to West Virginia and then leaving for Indiana with her significant other. At the dispositional hearing, petitioner stated her intention to remain out of the state by traveling to Wisconsin and Kentucky. In short, petitioner was almost entirely absent from the proceedings below, which clearly demonstrated her unwillingness to fully comply with an improvement period.

Even more importantly, petitioner refused to acknowledge the conditions of abuse and neglect throughout the proceedings. Specifically, petitioner testified at the dispositional hearing that she had never abused drugs, despite extensive evidence of not only her own substance abuse but also the fact that she provided drugs to her young children. As this Court has explained,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on this evidence, it is clear that petitioner not only failed to satisfy the applicable burden to obtain an improvement period, but also was not entitled to the same because of her refusal to acknowledge the conditions of abuse and neglect at issue. Accordingly, we find no abuse of the circuit court's discretion in denying petitioner's motion. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

This same evidence also supports the circuit court's termination of petitioner's parental rights. On appeal, petitioner presents little, if any, actual evidence in support of her argument that termination was in error. Instead, petitioner simply asserts that she requested disposition under West Virginia Code § 49-4-604(c)(5),[4] which permits a court to *temporarily* place a child in "the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court." According to petitioner, "her rights would only need to be terminated if there was someone wanting to adopt the children" and because the children are placed with the father, this was unnecessary. We again find petitioner's arguments unavailing because she does not challenge any of the circuit court's detailed findings regarding disposition, including the findings that termination of her parental rights was necessary for the children's welfare and that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon such findings. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Simply put, the fact that no one is seeking to adopt the children does not mean that petitioner's parental rights cannot be terminated. On the contrary, the court found that the children's welfare required termination of her parental rights because they needed stability and safety, which was threatened by the turmoil of petitioner's untreated substance abuse and mental health issues. Based on the overwhelming evidence in support of these determinations, which petitioner does not challenge on appeal, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 29, 2021, order is hereby affirmed.

Affirmed.

---

[4]In actuality, petitioner simply alleges that she "requested a Disposition V," with no citation to any specific subsection of the dispositional statute or any additional context to indicate to what, specifically, she is referring. Petitioner does allege that the court should have terminated only her custodial rights, but termination of custodial rights is governed by West Virginia Code § 49-4-604(c)(6), along with parental and guardianship rights. Because of her reference to "a Disposition V," it is assumed that petitioner is referring to West Virginia Code § 49-4-604(c)(5).

**ISSUED**: October 13, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton